Thank you. I'd like to reserve a couple of minutes at the end. All right. Try to keep track of it. I will. I'm Heather Williams, and I may or may not be in effective assistance counsel. I bring that up only because the government in its brief seems to be arguing that I am both, first by saying I'm not, and then, secondly, by pointing out the case that supposedly controls in this matter. But I'm getting ahead of myself. I would like to start Let me ask you about that point, however. The district court ruled on prong two here, that it was not the issue was not raised in the appeal, and therefore, that's the end of the effort to file collateral proceedings. One of the issues as to whether it was raised or why it wasn't raised on appeal was ineffective assistance of counsel. You were the counsel on appeal. I was. And you sought to be relieved and have new counsel appointed so that that issue could be presented, attacking your ability? Yes, sir. And the district court denied that motion? Correct. What was the district court's explanation? The district court's explanation was that at the time that a Waldron's case was being decided, both in the trial court and on appeal, the law held that there was no such precedent applicable to Waldron's case and that a reasonable attorney is not required to raise every non-frivolous issue that might exist in a particular case. Well, I have two questions about that. Who was there to argue the other side before the district judge made that decision as to what the law was? There was none except for the government. And you, the interested party? Correct. Secondly, what was the state of the law at the time? The state of the law at the time that Waldron's case was pending, but before sentencing one month before sentencing, the $69,000 case that the government has pointed out was decided just one month before Waldron's sentencing. I was not aware of it. I was the trial court counsel. I was not aware of it on appeal, and I did not know that Bajikadjian's case was pending on appeal either. I first became aware that Bajikadjian was around three days after the decision was made in Mr. Waldron's direct appeal. I would point out, however, that the $69,000 case is not on all fours with this case. It was certainly a stepping stone. It's not on all fours, but wouldn't it be enough to cause counsel who is familiar with the case to raise the issue on appeal? Absolutely. And, in fact, when I argued in front of the jury, I did argue that the money that the government was seeking forfeiture of was not the instrumentality, was not used to commit the crime, was not the proceeds of the offense. It was just the thing of the offense, as I described it. So I did make that argument. It's just I chose different issues to go ahead and pursue on appeal. Let us assume that that hurdle can be surmounted and that the panel can address the merits of Coram nobis. Isn't one of the requirements that the error be of fundamental magnitude, something like that? Yes. That is the last prong that needs to be addressed. And isn't it correct that Judge Roll could have imposed a fine of up to $20,000? That is correct. And, in fact Didn't he take that into consideration in looking at the jury's forfeiture determination? Yes. But he assumed that the forfeiture was lawful. And under Bajikaji, it is not lawful. Well, let's assume that he looked at that, that $69,000 case had been brought to his attention, and he vacated that portion of the jury's verdict, and he could have imposed a $20,000 fine. He could have imposed a fine up to $20,000. Yes, sir. Then comparing the $20,000 available fine to the $26,000 forfeiture, how does that It raises because the judge may have decided not to impose any additional fine. He may have decided to impose a minimal part of that, meaning that Waldron should get back the bulk of his money. And certainly if he had posed even the maximum of $20,000, Waldron should be getting back $6,092. This is Judge Roll, right? Yes, sir. There's not a second Judge Roll on Tucson, is there? Not that I know of. The $20,000 fine is for the most egregious offense possible, I assume. Yes. And Baja Cajun says that it's intended towards people who are true criminals, where the proceeds might be illegal, money launderers, drug people, drug runners, and so on like that. And that wasn't the case in Waldron's scenario. In Waldron's scenario, these were lawful money that he had received as part of an insurance settlement for a house that had burned down. And nobody ever found that the proceeds were unlawful. Just out of curiosity, nobody discusses, as far as I can tell in this case or in others, the statute that provides for the full forfeiture of all property involved in this in the offense of not failing to declare. Is this proceeding brought pursuant to that statute? Yes, it is. And what about the constitutionality of the statute? Well, maybe I didn't understand the question. The forfeiture in this particular case was brought pursuant to 18 U.S.C. 942. Many of the cases at the government side, and, in fact, every case that starts at U.S. versus some kind of currency, there was a forfeiture under Title 31, 5371. In Title 18, 982, the jury has to decide that the money was the instrumentality, was used to commit the offense, or was the proceeds of the unlawful activity. And that's what the Bajikajian case was, and that's what Waldron's case was. All the other cases that had been primarily cited by the government were cases under 5371, which basically asks you. Well, I don't believe that the forfeiture of all property involved in such an offense. Exactly. Is that the money? Okay. Then we get it. And that's when the other questions come into play. But that wasn't the forfeiture in Waldron's scenario. That was never alleged. In fact, the government went out of its way in the second superseding indictment to add a forfeiture count and add it pursuant to 18 Section 982. Well, my question is, doesn't 982 on its face violate the proportionality rule? It's not relevant in this case because nobody is raising that question, but I wondered why the constitutionality of that statute wasn't at issue in these proceedings. It was not raised in these proceedings. But my understanding is proportionality comes into issue when a person is arguing excessive fines and forfeitures, and that is certainly a test under the excessive fines and forfeitures analysis. Yes. Yes. It is. But the statute says that you automatically forfeit the entire amount. It wasn't raised. It's not proportionality, which would seem to conflict with the constitutional  I agree. And I think that's why the issue was eventually decided in Bajikadzian's case on the excessive fines analysis. But 5371 is not the statute that the money was forfeited under in this particular scenario. All right. I'd go ahead and reserve the rest of my time. Thank you. Thank you. May it please the Court. My name is Bruce Ferg. Excuse me. Assistant United States Attorney on behalf of the government. In this case, the defendant is seeking, through quorum nobis, to obtain a return of a partial forfeiture of money that he did not declare on crossing the border or attempting to cross the border in excess. The money he was required to declare, isn't it, the amount in excess? Well, the amount that you're supposed to declare is, in fact, the amount that is in excess. The amount that you should forfeit, leaving him the 10,000 that placed him at the threshold, if you will. The government maintains that out of the three requirements for quorum nobis, which have been traditionally recognized by this Court, the defendant has failed to show three of them. And, therefore, the district court certainly was correct in denying his petition. The district court relied on one, on item two, right, that he hadn't raised it on his direct appeal. That's correct, that there was no good reason. And there, there was no legitimate two-sided contest before the district court, because the issue is whether counsel who was appearing before him was incompetent, and he refused to allow separate counsel, allow her to withdraw, so that argument could be presented by other counsel. The district court found that there was no indication of ineffective assistance in there. I know they found that, but I said they found it without a lawyer representing the defendant on the issue, other than the lawyer who was the accused. That's correct. How do you justify that? Well, as I indicated in the brief, I think, actually, the district court in this case, as well as the defense, has gone off on a wrong tack, because, in fact, there was a case available, the $69,000 forfeiture case, which would have provided a basis for presenting the claim. Therefore, to the extent that Judge Rohl thought that there was no precedent and, therefore, no ineffectiveness, he was incorrect. But the bottom line is that the Supreme Court, Bajikagian case, determined that proportionality is the only test to be used, and, therefore, the fact that they did not have the opportunity to raise this instrumentality argument is simply irrelevant, which is what Bajikagian found. You lose nothing by not being able to present a legally incorrect theory. Therefore, there was no prejudice, and, therefore, no ineffective assistance. So although, with all due respect, I believe Judge Rohl analyzed this incorrectly, his ultimate conclusion, that there was no ineffective assistance, and, in fact, in response to Judge Hawkins' view or question, was there, in fact, fundamental error, the answer is no, because he lost nothing. Well, you have just lost me on that argument. There was a case available that suggested or at least implied that the jury's forfeiture determination was inappropriate. That's correct. And it was not cited to the district court? That's right. And in a timely fashion, the lawyer who did not present that case in the first instance when it could have been presented asked to withdraw so that another lawyer could come in and argue her ineffective assistance, correct? That's right. So you say that's okay? Well, I drew the analogy in the brief to the Fretwell case that the Supreme Court decided, which basically said there is no ineffective assistance if a counsel fails to present an argument which ultimately is found not to be legally valid, which is exactly what happened here. The fact that he didn't have the opportunity to have the court make an error in his fact is not a cognizable interest. And what the Supreme Court Bajikagian case said was that instrumentality simply is irrelevant, which is the whole issue in 69,000, in this Court's Bajikagian and so forth. They simply said, no, it's strictly proportionality, which is not an issue that has ever been raised, and therefore, by failing to question instrumentality or present that. Well, you see, the problem with that argument, I follow your argument, and I think you're basically correct that if you don't raise an issue that was the law at the time but later turns out not to be right, then it's not an effective assistance. I would agree with you up to that point. The problem is that what you then go on to say is that the law really changed afterwards and that it's not an effective assistance because the law wasn't simply proportionality as of the time of the appeal. That became the law afterwards. Well, I wouldn't say that it changed. I'm saying that, or my understanding is that it must have changed because as of the time of the appeal, there was a reason to say it's not the instrumentality of the crime. The Court was wrong. Well, there was a reason to say that the Ninth Circuit, this Court, had held that way, but ultimately, the Supreme Court said, no, you're misunderstanding. That's not the correct approach. That's not the correct analysis. Well, it was the basis that it was the instrumentality. It was the basis of all the proceedings up until that time, wasn't it? And it would have been the appropriate thing for an informed lawyer to do to raise that issue on appeal. You say, but it turns out it doesn't matter because it turns out that everybody was wrong and the law was what the Supreme Court says. It only matters whether it's proportional. Well, had the law been that at the time of the appeal, undoubtedly counsel would have raised the question of proportionality, and it would have been an effective assistance not to raise it then. I can understand the Court's question, but all I can say is that this is, as far as I can tell, on all fours with the Fretwell case. Doesn't it really come down anyway, as Judge Hopkins has suggested? Ultimately, it really comes down to the question of whether this was grossly disproportional. Well, if you even get to that, because I think it's important to make sure. If the Court didn't get to it. And one question is, if we get to that, should we decide it or let the district court decide that question? You'd have to determine that quorum nobis in some sense was appropriate. I said if we get to that. Let's assume we determine quorum nobis applies. Let's assume we get over the procedural problems and we get to the question that Judge Hopkins raised, is it really grossly disproportionate? I would argue no. Well, no. My first question to you is, if we get to that question, do you think we should decide that or should we remand that, since the district court never considered it? If you were to reach that point, I would think that it's more appropriate to have the district court decide that in the first instance, because it takes an analysis of all of the factors that were involved in the case. And there is, in effect, fact-finding that needs to be done with regard to that, which hasn't been done yet. However, what I wanted to emphasize here is that we are, in fact, dealing with quorum nobis, which is an extremely limited, extraordinary remedy, and you need to have all four of these factors. It's — Well, we've discussed factor two. What other factors do you think they didn't meet? You said there were three. That's correct. I think that — That's two and four. Which is your third? Well, my third one is the fact that, so far as I've been able to find, no court, including this one, has ever held that a naked claim to return of money where the conviction itself has not been challenged has ever been the basis for quorum nobis. Surely you're not suggesting the property rights are not as important as human rights. I would not try and make that kind of a policy decision. All I know is what the case law says. But I keep hearing about under the Due Process Clause, property is just as important as life and liberty. I hear that all the time these days. Well, the bottom line is that this is a common-law remedy, which this Court — as a matter of fact, I'd like to direct the Court's attention to a case that you authored by the name of Estate v. McKinney. And there unanimously the panel stated that in that case where it was a widow trying to obtain money back that had been forfeited to her convicted husband, who was then deceased, that the appellants do not and cannot allege that they have suffered an unlawful conviction. Consequently, they have not suffered the essential harm that quorum nobis seeks to address. We therefore hold that they failed to allege an interest within the zone protected by quorum nobis. And that's consistent with this Court's and the Supreme Court's jurisprudence, which is that it is the conviction which is the critical element. And although — You say quorum nobis can't apply penalties if the conviction is lawful? The only cases where I've seen where penalties have been remitted as part of quorum nobis is when they have an attack at the same time, not separately and independently as is the case here. In other words, the Seventh Circuit called it basically a sunk cost. It's more in the nature of a typical civil loss rather than the continuing disability which Morgan and Mayer said is necessary to have the kind of fundamental problem which quorum nobis' limited remedy is designed to deal with. If my time is up, if there are further questions, I'd be glad to address them. Yeah. How about United States v. Mint? I'm sorry? Come across that. It's M-E-T-T. Mint? Yeah. Mint. Mint. 65 F. 3rd, 1531. Allows an attack on a fine. I'm sorry. I'm not familiar with that one. Quorum nobis. Defendants sentenced only to pay a fine cannot attack sentences by means of a State abeas statute, but it allowed quorum nobis to attack the fine. Did you come across that in your research? No, sir. What circuit is that from? Can you tell me? The one you're in. I westlawed quorum nobis up and down, and I did not see that one. I apologize. I can submit additional briefing having looked at it. Well, I'm sure if the panel wants it, we'll ask for it. Thank you for your answer. This is mine. Judge Reinhart asked an interesting question. If the Court should decide what a quorum nobis should be granted, then what can the Court order? I think that the Court in this case can go ahead and order that the entire ---- No, that wasn't my question. My question is if we get to prong four, we decide that you can have quorum nobis in this type of a case. And for instance, had he been fined a million dollars, that maybe that would have been grossly disproportionate. And the question is, is a fine of $26,000 grossly disproportionate? Does it violate the Eighth Amendment? If we get to that grossly disproportionate question, which the district court did not address, is the proper remedy for us to proceed and answer that question ab initio, or should we remand and let the district court have the first crack at the grossly disproportionate question? I think that this Court needs to let the district court, even though that doesn't help me, needs to let the district court go ahead and do some balancing first in that kind of a situation. We feel that the Court doesn't need to get that far, though, because as much as the government is saying Bajikagian only decides proportionality, it does not. It absolutely affirms this Court's decision in footnote 9 of its opinion that the currency is not the instrumentality of the offense, it is the subject of the crime and should not be forfeited in the first place. So this Court doesn't even need to get to the proportionality argument. The government has conceded that there is no other remedy at this time, no other relief available. There is a good reason for not having brought it before. The district court found that there was a good reason that this had not been raised before, because the first time the $69,000 case was raised was on appeal and it was in the government's brief. So in the past, what will be 13 years next month, nobody has raised the $69,000 case before. The $69,000 case is not precedent. It is not on all fours the way the Bajikagian case is. This certainly is an adverse consequence. It is continuing. He is deprived of the use of his money. I don't understand. Footnote 9 does say that it's not an instrumentality of the crime. But it doesn't say, therefore, that's the end of the case. There can't be any forfeiture. It then goes on to examine the question of whether the forfeiture is excessive. That is correct. But to say that it did not uphold the ---- In doing that, we looked at proportionality. That is correct. But in addressing what the government is arguing, that proportionality is the only question, the first question under 18 section 982 that has to be answered is whether or not it is the instrumentality. So as a matter of law ---- It has to be the instrumentality. In Bajikagian, it wasn't the instrumentality. I disagree. I mean, I respectfully disagree. I believe that ---- Footnote 9 says it's not the instrumentality?  No. It does say that it is the instrumentality, but doesn't ---- Is the instrumentality? Yes. Footnote 9 said it wasn't. No. It actually upholds this Court's decision in Bajikagian, but goes on to decide Bajikagian. Footnote 9 says the currency in question is not an instrumentality in any event. Then I grievously misread that. I read it to say the currency is merely the subject of the crime of the failure to report and is not the instrumentality. Yes. It's not the instrumentality. We agree it's not the instrumentality. It is not. It is not used to commit the crime. It was not used as a proceeds. It's not an instrumentality. Correct. Okay. So it doesn't have to be an instrumentality. In order to be forfeited? Yes. Under, I believe, 18 section 982, we read that it does have to be forfeited, it does, if the Bajikagian case decides that it is not. I have a disagreement on that issue. I think misreading the same thing. Thank you very much. Thank you. Thank you both very much. The case just argued will be submitted.
judges: Reinhardt, Noonan, Hawkins